UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VADIM SHMUSHKOVICH AND BENJAMIN RINE, individually and on behalf of and in the name of the UNITED STATES OF AMERICA, and the STATE OF ILLINOIS,<br><br>Plaintiffs,<br><br>v.<br><br>HOME BOUND HEALTHCARE, INC.; HOME BOUND HEALTHCARE HOSPICE, LLC; HOME BOUND HEALTHCARE CONSULTING, LLC; HOME BOUND HEALTHCARE MEIDCAL EQUIPMENT & SUPPLIES, LLC; HOME BOUND HEALTHCARE OUTPATIENT THERAPY SERVICES, LLC; HOME BOUND HEALTHCARE STAFFING, LLC; and HOME BOUND HEALTHCARE NEVADA, INC.,<br><br>Defendants. | No. 12 C 2924<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Vadim Shmushkovich and Benjamin Rine allege that their former employer, Home Bound Healthcare, Inc.,[1] knowingly submitted numerous claims for payment to Medicare that were false, in violation of the False Claims Act ("FCA") and Illinois False Claims Act. *See* R. 32. On November 25, 2014, Home Bound placed Rine on administrative leave after the complaint in this case was unsealed. R. 39 at 1. Home Bound also requested the return of "[a]ll Homebound property," including files stored on Plaintiff's home computer that had been necessary to the performance of

---

[1] Defendants include a number of entities related to Home Bound Healthcare, Inc. The Court will refer to these entities as "Home Bound."

his job-related duties. *Id.* at 1-2. In response to that request, Rine purchased two hard drives and created identical encrypted copies of the requested computer files. He gave one hard drive to Home Bound on December 2, 2014, and began deleting the remaining files on his home computer on December 5, 2014. *Id.* at 2; R. 43 at 3. Rine gave the second hard drive to his attorney who has kept it in a sealed envelope in his Las Vegas office. R. 39 at 2; R. 43 at 1. Home Bound fired Rine on March 6, 2015, citing a variety of reasons that included the misappropriation of Home Bound property. R. 44-4 at 1. Home Bound has made a motion for an order requiring Rine to return "any and all property of the Defendants, both originals and copies, that are still in the possession of the Plaintiffs and/or their attorneys." R. 39 at 1. For the following reasons, Home Bound's motion is denied in part and granted in part.

## Analysis

Home Bound contends that the documents Rine has retained on the hard drive belong to Home Bound and the Court should order Rine to return it for that reason. *See* R. 45 at 1. Home Bound argues that the only way for Rine to properly possess the documents in question is to seek them through formal discovery pursuant to Federal Rule of Civil Procedure 26, which affords Home Bound the opportunity to object to any document request Rine might make. R. 39 at 3-4. Rine argues that he has a right to retain the documents because (1) he has already returned an identical copy of the information, and (2) Home Bound might "delete or destroy" the files. R. 43 at 3.

None of the cases the parties cite in briefing this motion address the circumstances of a relator bringing an action under the False Claims Act. This is surprising because a number of courts have addressed whether a whistleblower may retain improperly obtained documents that are relevant to a qui tam action. For instance, several courts have recognized a public policy exception to the enforcement of nondisclosure agreements and similar contractual obligations related to information used in pursuit of False Claim Act investigations. *See United States ex rel. Grandeau v. Cancer Treatment Ctrs. of Am.*, 350 F. Supp. 2d 765, 773 (N.D. Ill. 2004) (holding that an employee could not be held liable for a breach of contract action because of the strong public policy supporting whistleblower action in FCA cases); *United States ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp. 2d 1033, 1039 (C.D. Cal. 2012) ("Indeed, the Ninth Circuit has stated that public policy merits finding individuals such as Relators to be exempt from liability for violation of their nondisclosure agreement."); *X Corp. v. Doe*, 805 F. Supp. 1298, 1310 n.24 (E.D. Va. 1992) ("To the extent that it prevented disclosure of evidence of a fraud on the government, that Agreement would be void as contrary to public policy. . . . X Corp. cannot rely on any contract to conceal illegal activity."). Most federal courts acknowledge this public policy exception. *See* Stephen M. Payne, *Let's be Reasonable: Controlling Self-Help Discovery in False Claims Act Suits*, 81 U. CHI. L. REV. 1297, 1298-99 (2014) ("The first and largest group of courts holds that public policy voids confidentiality agreements in the context of the FCA.").

Courts have also noted that Congress, in passing the FCA, contemplated the need for relators to produce and obtain confidential corporate documents. *See United States ex rel. Rector v. Bon Secours Richmond Health Corp.*, 2014 WL 66714, at *6 (E.D. Va. Jan. 6, 2014) ("It is true that the FCA contemplates whistleblower possession of documents obtained from employers that evidence fraud upon the government."); *Siebert v. Gene Sec. Network, Inc.*, 2013 WL 5645309, at *8 (N.D. Cal. Oct. 16, 2013) ("any alleged obligation by Siebert not to retain or disclose the confidential documents that form the basis of this action is unenforceable as a matter of public policy because it would frustrate Congress' purpose in enacting the [FCA]"); *Ruhe*, 929 F. Supp. 2d at 1039 ("this taking and publication was not wrongful, even in light of nondisclosure agreements, given the strong public policy in favor of protecting whistleblowers who report fraud against the government").

The Seventh Circuit has similarly recognized a "broad" policy interest in fostering employee actions under the False Claims Act. *See Fanslow v. Chi. Mfg. Ctr., Inc.*, 384 F.3d 469, 479 (7th Cir. 2004). In the context of assessing a retaliation claim based on the plaintiff's claim under the False Claims Act, the Seventh Circuit recognized the policy importance of not discouraging whistleblowers from undertaking investigative efforts that might expose fraud against the government. *Id.* ("The term 'protected activity' is interpreted broadly, in light of the purpose of the statute."). This recognition is consistent with the "the FCA's unique structure," which some argue, "mandates that the relator produce internal company information as part of filing a qui tam case." Joel D. Hesch, *The False Claims Act*

*Creates a "Zone of Protection" that Bars Suits Against Employees Who Report Fraud Against the Government*, 62 DRAKE L. REV. 361, 391 (2014).

The protections afforded self-help discovery under the False Claims Act, however, have only extended to the collection of materials that are reasonably related to the formation of a case. For instance, in *United States ex rel. Cafasso v. General Dynamics C4 Systems, Inc.*, the Ninth Circuit affirmed a district court's decision to allow counterclaims for conversion of documents to proceed because the plaintiff's retention of documents irrelevant to the plaintiff's FCA claims was "overbroad and unreasonable, and cannot be sustained by reference to the public policy exception." 637 F.3d 1047, 1062 (9th Cir. 2011). The court noted, "Were we to adopt a public policy exception to confidentiality agreements to protect relators . . . those asserting its protections would need to justify why removal was reasonably necessary to pursue an FCA claim." *Id.*; *see also United States ex rel. Wildhirt v. AARS Forever, Inc.*, 2013 WL 5304092, at *6 (N.D. Ill. Sept. 19, 2013) (the defendants' "counterclaims are independent of the FCA claim because, particularly given the extremely broad scope of documents and communications that relators are alleged to have retained and disclosed, the counterclaims' success does not require . . . that defendants are liable (or not liable) under the FCA"); *Siebert*, 2013 WL 5645309, at *8 ("But the court cannot now conclude that the counterclaim in its entirety should be dismissed, because it is possible that Siebert also took confidential documents that bore no relation to his False Claims Act claim.").

Indeed, some courts have considered sanctions for overbroad retention of documents. *See Glynn v. EDO Corp.*, 2010 WL 3294347, at *3 (D. Md. Aug. 20, 2010) ("Because they (1) improperly received internal IST documents from Martin and (2) asserted the common interest privilege in bad faith, I will impose a $20,000 sanction against Glynn and TELG to deter future misconduct and mitigate any prejudice suffered by IST."); *Rector*, 2014 WL 66714, at *6 (stating that sanctions may be appropriate where the plaintiff "possesses an indiscriminate amount of data and documents that might not be reachable in the discovery process"). One of those courts noted, however, that the sanction of dismissal was not appropriate because "any documents that were in fact helpful to [the plaintiff] presumably would have been disclosed in discovery anyway." *Glynn*, 2010 WL 3294347, at *5. Using similar reasoning, at least one court eschewed sanctions altogether and simply ordered the plaintiff to return all documents and reacquire any documents relevant to the plaintiff's claims them through discovery. *See Ashman v. Solectron Corp.*, 2008 WL 5071101, at *4 (N.D. Cal. Dec. 1, 2008) ("After all the documents are returned to Solectron, Ashman will be permitted to use any document produced by Solectron during the normal course of discovery."); *see also* Hesch, 62 DRAKE L. REV. at 417 (in cases of overbroad self-help discovery "the normal remedy and appropriate solution is to return irrelevant documents to the company").

Yet other courts, however, have recognized the inefficiency of ordering return of documents that formed the basis of a relator's claims and that will inevitably be recovered in discovery. *See United States ex rel. Head v. Kane Co.*, 668 F. Supp. 2d

146, 152 (D.D.C. 2009) ("Enforcing a private agreement that requires a qui tam plaintiff to turn over his or her copy of a document, which is likely to be needed as evidence at trial . . . would unduly frustrate the purpose of this provision."); *X Corp.*, 805 F. Supp. at 1311-12 ("Nor . . . is it clear that X Corp. is likely to prevail on the merits of the breach of Confidentiality Agreement claim pursuant to which it seeks recovery of the documents. Indeed, if the documents clearly establish a fraud, it is unlikely that X Corp. would prevail."). These courts recognize that the public policy interests underlying the FCA support relators' potential need to take possession of evidence in a manner that might otherwise violate common discovery practice, and that confidential information will often be the only means by which an FCA plaintiff can prove a qui tam action. *See* Payne, 81 U. CHI. L. REV. at 1308 ("FCA relators are justified in their fear that, without appropriated documents proving fraud, they simply will not be believed").

Apart from the circumstances attendant to False Claims Act and other qui tam actions in particular, "[d]istrict judges enjoy broad discretion in settling discovery disputes and delimiting the scope of discovery in a given case." *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1052 (7th Cir. 1998). Given this discretion, combined with the broad range of activity protected by the FCA and the public policy favoring facilitation of such claims, the Court will not require Rine to return the hard drive he retained. Instead, Rine may retain copies of any documents he determines are relevant to his claims under the False Claims Act. Requiring Rine to return documents that he will inevitably receive in discovery is a formality that has

7

been obviated by the circumstances of the case (i.e., Rine already has copies of the documents and Home Bound knows what documents he has) and will only serve to unnecessarily increase the expense and extend the length of the litigation. However, Rine must also destroy any documents that are not relevant to his claims.

Additionally, Rine must provide Home Bound with a list of the documents he retains. Home Bound will then have the opportunity to contest the relevance of those documents under Rule 26. This procedure addresses Home Bound's concern that Rine's unauthorized retention of the documents has deprived it of the "opportunity to object where appropriate." R. 39 at 3.

Home Bound also was concerned about Rine's possible unauthorized acquisition of privileged documents. Rine's possession of any such documents is not by itself considered a waiver of any privilege. Should Rine's counsel review any privileged documents that are later deemed improperly held, a hearing may be required to determine whether Home Bound has been injured by Rine's counsel's access to privileged documents, and what remedies may be necessary to address that injury. Lastly, the parties should reach agreement on a protective order and submit it for entry by the Court.

**Conclusion**

For the foregoing reasons, Home Bound's motion for return of property, R. 39, is denied in part in that Rine may retain documents relevant to his claims in accordance with the Court's order, and granted in part in that Rine must destroy all documents not relevant to his claims.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: June 23, 2015