VADIM SHMUSHKOVICH AND BENJAMIN RINE, individually and on behalf of and in the name of the UNITED STATES OF AMERICA, and the STATE OF ILLINOIS,

        Plaintiffs,

    v.

HOME BOUND HEALTHCARE, INC.; HOME BOUND HEALTHCARE HOSPICE, LLC; HOME BOUND HEALTHCARE CONSULTING, LLC; HOME BOUND HEALTHCARE MEDICAL EQUIPMENT & SUPPLIES, LLC; HOME BOUND HEALTHCARE OUTPATIENT THERAPY SERVICES, LLC; HOME BOUND HEALTHCARE STAFFING, LLC; and HOME BOUND HEALTHCARE NEVADA, INC.,

        Defendants.

No. 12 C 2924

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Vadim Shmushkovich and Benjamin Rine allege that their former employer, Home Bound Healthcare, Inc.,[1] knowingly submitted false claims for payment to Medicare in violation of the False Claims Act ("FCA") (Counts I and II), and to Medicaid in violation of the Illinois False Claims Act (Count III). *See* R. 32. Home Bound has moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) for failure to state a claim with the requisite

---

[1] Defendants include a number of entities related to Home Bound Healthcare, Inc. The Court will refer to these entities as "Home Bound."

particularity. R. 36. For the following reasons, the motion is denied in part and granted in part.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g.,* *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

Additionally, it is well established that the FCA "is an anti-fraud statute and claims under it are subject to the heightened pleading requirements of Rule 9(b)."

*Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 998 (7th Cir. 2014). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." "The reference to 'circumstances' in the rule requires the plaintiff to state the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff[.]" *United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 705 (7th Cir. 2015); *see also United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009) ("particularity . . . means the who, what, when, where, and how"). Nevertheless, courts should not "take an overly rigid view of the formulation," and the "requisite information . . . may vary on the facts of a given case." *Pirelli v. Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011). Thus, although plaintiffs "'are not absolutely required to plead the specific date, place, or time of the fraudulent acts,'" they "still must 'use some alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Id.* (quoting 2 James Wm. Moore, MOORE'S FEDERAL PRACTICE § 9.03[1][b], at 9-18 (3d ed. 2010)). Rule 9(b) requires a "plaintiff to do more than the usual investigation before filing [a] complaint. Greater precomplaint investigation is warranted in fraud cases because public charges of fraud can do great harm to the reputation of a business firm or other enterprise (or individual)." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999) (citations omitted).

## Background

Home Bound is a provider of health care services in patients' homes. R. 32 ¶¶ 10-11. Such services can be eligible for Medicare coverage. *Id.* ¶¶ 15-16. To be eligible for home health care under Medicare, patients must require "fewer than eight hours per day" of in-home care, and "must be unable to leave their homes without considerable effort." *Id.* ¶ 21. A physician must certify a patient's eligibility for home health care. *Id.* ¶ 22. To certify a patient for home health care, a physician must have a "face-to-face encounter" with the patient, whether in person or via "telehealth." *Id.* ¶¶ 26-27. Medicare pays for home health care in 60-day periods, meaning that a patient's eligibility for such care must be recertified every 60 days. *Id.* ¶¶ 23-24. Plaintiffs allege that the "vast majority of the services performed by Home Bound are ultimately reimbursed by Medicare." *Id.* ¶ 13.

Plaintiffs are former Home Bound employees. Their allegations are based on information they learned while working at Home Bound, both from other Home Bound employees and from Home Bounds records. Plaintiffs allege that Home Bound knowingly submitted the following four kinds of false claims: (1) "claims for reimbursement . . . for services that were performed for people who were not of restricted mobility and hence were not qualified to receive home health services, and claims for "services that were not reimbursable because of a lack of medical necessity"; (2) "claims for services which were not rendered"; and (3) claims for "services which were not reimbursable because they were the result of illegal referral kickback schemes." *Id.* ¶ 19.

### 1. False Claims for Patients who did not Qualify to Receive Home Health Services, and Claims for Services which Were Not Medically Necessary

Plaintiffs allege that they have been told by Home Bound nurses Ashley Bardez-Banian, Angela Clark, and Donna Livengood that "90% to 95%" of the patients the nurses saw while working for Home Bound "were not legitimately qualified for home health services." R. 32 ¶ 43. Plaintiffs allege that Home Bound employed marketing professionals (specifically Amanda Mauer and Sherry Mauer) to research and find potential patients. *Id.* ¶ 30. Plaintiffs also allege that Home Bound gave the marketers the authority to determine whether Home Bound should provide home health care services to these patients, regardless of whether the patients they discovered were eligible for home services under Medicare. *Id.* ¶¶ 30-33.

Plaintiffs allege that Nurse Bardez-Banian told them that Home Bound ordered her to provide home health care services for at least four patients—identified by name in the complaint—even though she informed Home Bound that these patients did not require such services. *Id.* ¶¶ 58, 65. According to Plaintiffs, Nurse Bardez-Banian told them that three of these four patients had been found to be ineligible for home health care services, but were later assigned to resume such services at the behest of Home Bound's marketing department. *Id.* ¶ 58. Nurse Bardez-Banian also told Plaintiffs that the fourth patient identified in the complaint had a stable health condition that did not require regular health visits. *Id.*

Additionally, Home Bound Nurse Ronald Athens told Plaintiffs that Home Bound ordered him to provide home health care services for a patient—also identified by name in the complaint—who did not qualify for such services under Medicare. R. 32 ¶¶ 67-72. According to Plaintiffs, Nurse Athens told them that he "had no idea what he was supposed to be treating [the patient] for" because "there was nothing for which she needed any assistance." *Id.* ¶ 69. The patient's husband told Nurse Athens that he should not visit them anymore because the patient did not require his assistance. *Id.* When Nurse Athens reported this to Home Bound, he was told to continue to see the patient for a minimum of six weeks. *Id.*

### 2.     False Claims for Services which Were Not Rendered

Plaintiffs allege that the services Home Bound provided were driven by a desire to maximize reimbursement from Medicare, rather than by the patients' medical needs. Specifically, Plaintiffs allege that, according to Nurses Bardez-Banian and Livengood, Home Bound nurses were trained to visit patients once a week for nine weeks—known as the "one times nine" policy—because Medicare reimbursement is maximized when patients are visited between six and nine times during a 60-day episode of home health care services. R. 32 ¶¶ 36, 41. Plaintiffs allege that "[p]atients with serious illnesses, such as congestive heart failure, were regularly not seen as often as medically necessary because Home Bound management instructed nurses to see each patient only once per week." *Id.* ¶ 37. Plaintiff Rine analyzed Home Bound's records and found that over half of all 60-day

episodes of care involved between six and nine nursing visits, with Home Bound's Peoria location providing that number of visits 62% of the time. *Id.* ¶ 40.

In addition to Home Bound's policy regarding number of visits, Plaintiffs allege the Home Bound nurses "shorten . . . [patient] assessments, and [do not] do certain assessments at all, in order to minimize the time caring for any one patient and maximize . . . profits." *Id.* ¶ 45. Plaintiffs allege that Nurse Denise Smith trains nurses at Home Bound's Peoria location to perform truncated assessments for patients who had already received home health care services for 60 days and were being reassessed for eligibility for another 60 days. *Id.* ¶ 46. Specifically, Plaintiffs allege that in such circumstances Nurse Smith trained nurses to skip the "Timed Up & Go" test, which tests a patient's mobility and risk of falling. *Id.* Plaintiffs also allege that nurses were trained to skip taking vital signs at every visit, and instead reuse vital sign measurements from the previous visit. *Id.* ¶ 47. Further, Plaintiffs allege Home Bound instructs nurses to limit visits to approximately 15 minutes each, but then charges Medicate for 30 minutes visits. *Id.* ¶ 45.

### 3. False Claims Supported by Illegal Kickback Referrals

Plaintiffs also allege that Home Bound pays doctors to certify patients for home health care without examining them in person. Plaintiffs contend that this violates the Anti-Kickback Statute and as such constitutes a violation of the False Claims Act. R. 32 ¶ 83 (citing 42 U.S.C. § 1320a-7b(g)).

Plaintiffs allege that Ruby Rosalem, an administrator at Home Bound's Peoria location, delivered blank certification forms to Dr. Michael Honan to sign

without examining any patients. R. 32 ¶ 95. Sometime between October 2011 and February 24, 2012, Nurse Angela Clark witnessed Rosalem leave the Peoria office with the forms and state that she was delivering them to Dr. Honan for his signature. *Id.* Plaintiffs also allege "on information and belief" that Dr. Honan signed one of those forms on December 29, 2011, attesting that he had examined a certain patient—also identified by name in the complaint—on December 28, 2011, and that she was eligible for home health care services. *Id.* ¶ 96. Plaintiffs allege, however, that Dr. Honan never actually met the patient and that he did not actually sign the form on December 29, 2011. *Id.* Plaintiffs do not explain why they believe these allegations about Dr. Honan to be true.

Plaintiffs also allege on information and belief that Home Bound pays kickbacks to doctors "who recommend that their patients receive home health services," but "classifies" those payments as "consulting fees." R. 32 ¶¶ 84-85. Specifically, Plaintiffs allege on information and belief that Home Bound pays Dr. Honan as a "medical director" in remuneration for Dr. Honan's agreement to certify patients for home health care services under Medicare even though he has not examined them. *Id.* ¶ 94. Plaintiffs do not explain why they believe these allegations to be true either.

## Analysis

The complaint includes three counts: Count I alleges violations of the federal False Claims Act based on Home Bound's alleged presentment of false claims for home health care services to Medicare. Count II alleges violations of the federal

False Claims Act based on conduct that allegedly constitutes a violation of the Anti-Kickback Statute. Count III alleges violations of the Illinois False Claims Act based on Home Bound's alleged presentment of false claims for home health care services to Medicaid.

**Count I – Medicare Claims under the Federal False Claims Act**

The False Claims Act creates liability for a "person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). "To establish civil liability under the False Claims Act, a relator generally must prove (1) that the defendant made a statement in order to receive money from the government; (2) that the statement was false; and (3) that the defendant knew the statement was false." *United States ex rel. Yannacopoulos v. General Dynamics*, 652 F.3d 818, 822 (7th Cir. 2010). Plaintiffs allege that Home Bound presented claims to Medicare (A) for patients who were not qualified, and for services that were not medically necessary, and (B) for services not actually provided, such that those claims were false.

A.    **Claims for Patients who did not Qualify to Receive Home Health Care Services, and Claims for Services which Were Not Medically Necessary**

1.    **Whether Plaintiffs Have Sufficiently Alleged that Home Bound Presented Claims to Medicare**

Home Bound argues that Plaintiffs' allegations are insufficient because "there are no plausible particularized allegations that a reasonably identifiable false claim was actually submitted by [Home Bound] that would otherwise excuse Plaintiffs' inability to provide the details of even a single allegedly false claims." R.

54 at 4. This is simply an incorrect characterization of Plaintiffs' allegations. Plaintiffs have alleged that four Home Bound nurses told them that Home Bound required the nurses to provide home health care services to at least five patients who did not require such services and so were not eligible for Medicare reimbursement for such services. Plaintiffs also allege that these five patients were nevertheless covered by Medicare, and that the "vast majority of the services performed by Home Bound are ultimately reimbursed by Medicare." R. 32 ¶ 13. Plaintiffs allege that Home Bound's "marketing" staff (specifically Amanda Mauer and Sherry Mauer) was responsible for discovering potential patients regardless of their medical need. Nurse Bardez-Banian also told Plaintiffs that she was ignored when she brought these circumstances to Home Bound's attention, and that patients who had been found to be ineligible for home health care were nevertheless reassigned such care at the behest of Home Bound's marketing staff. Plaintiffs allege that they know these facts because Home Bound nurses—whom Plaintiffs have identified by name—told them they are so.

These allegations do not fully describe the "who, what, when, where, and how" of the fraud. But Plaintiffs are not in a position of access to specific billing records, so they are not required to plead with particularity information that would be derived from such records. *See Pirelli*, 631 F.3d at 443; *Lusby*, 570 F.3d at 854-55 ("We don't think it essential for a relator to produce the invoices (and accompanying representations) at the outset of the suit. True, it is essential to show a false statement. But much knowledge is inferential . . . . It is enough to show, in detail,

the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy."). Plaintiffs allegations are also based almost entirely on information and belief, and "a plaintiff generally cannot satisfy the particularity requirement of Rule 9(b) with a complaint that is filed on information and belief." *Pirelli*, 631 F.3d at 442. But the fact that Plaintiffs' allegations are based on information and belief is not fatal to their claims because they "provide the grounds for their suspicions," *id.* at 443, by referencing the information they learned from Home Bound nurses specifically named in the complaint. Considering the nurses' direct experience with Home Bound's patients and policies, the nurses' stories provide a basis for Plaintiffs to make plausible allegations of False Claims Act violations against Home Bound. *Cf. Pirelli*, 631 F.3d at 443-44 (implying that information a pharmacist-relator learned from pharmacists employed by a competitor pharmacy was sufficient to state a False Claims Act claim against the competitor pharmacy). These allegations also satisfy Rule 9(b) because they sufficiently identify the "circumstances" of the false claims such that Home Bound "can respond effectively, and [the Court] can set an appropriate course for the litigation process." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 949 (7th Cir. 2013).

### a.     Access to Evidence

Home Bound contends, however, that "there is absolutely nothing to support Plaintiffs' position that the facts constituting the alleged fraud are not accessible to them or are within the exclusive control of [Home Bound]." R. 54 at 5. Certainly it is

true that Plaintiffs have some knowledge about Home Bound. In fact, they have some of Home Bound's records, which enabled Plaintiffs to include statistics in their complaint regarding the frequency with which Home Bound nurses visited patients. But it is entirely plausible that Plaintiffs did not have access to billing records for the five patients they identify in their complaint that would have allowed them to specifically allege that Home Bound submitted Medicare claims for services rendered to those patients. Plaintiffs do not allege that they worked in the billing department of Home Bound. And even if it was possible at some point during their employment for Plaintiffs to access the records necessary to confirm their allegations, this does not mean that they had Home Bound's *permission* to access those records. Sometimes in the a course of a relator's employment, the relator will come into possession of records containing information enabling the relator to directly allege with particularity that the defendant-employer made false claims. But the Seventh Circuit has recognized that this is frequently not the case, and it is unreasonable to expect employees to breach an employer's policies regarding access to records in order to state a claim under the False Claims Act. The law should not encourage theft or other questionable behavior.

Home Bound also argues that Plaintiffs have access to the relevant records because "the documents containing the alleged requisite information are in the possession of other entities, including the government, to whom the Plaintiff's no doubt provided information when they tried to get the government to prosecute the case against [Home Bound]." R. 54 at 5. It is unclear why Home Bound believes

Plaintiffs should have access to the billing information necessary to support their claims because they reported their suspicions to the U.S. Attorney's Office in this district in accordance with the False Claims Act's requirements. Of course the "government"—since Medicare is a government program—has copies of claims Home Bound has submitted to Medicare. But Plaintiffs could only "access" those records through a Freedom of Information Act request, and even then it is questionable what records, if any, would be disclosed in light of HIPPA and other health care privacy laws. Home Bound cites no authority for the contention that Plaintiffs are required to go to such lengths before filing a complaint under the False Claims Act. To the extent that courts in other Circuits have held that records must be in the defendants "unique" or "exclusive" control to permit relaxing Rule 9(b)'s standard in the manner described in *Pirelli* and *Lusby*, that is not the law in this Circuit, and Home Bound's citation to cases relying on such authority is unavailing. *See* R. 54 at 5-6 (citing *Peterson v. Comm. Gen. Hosp.*, 2003 WL 262515, at *2 (N.D. Ill. Feb. 7, 2003) (citing *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1314 n.25 (11th Cir. 2002); *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999))).[2]

### b.    Presentation of Claims

Home Bound also argues that "even assuming . . . the facts constituting the fraud are not accessible to Plaintiffs, they are still not entitled to plead allegations

---

[2] Home Bound also cites *Bankers Trust Co. v. Old Republic Inc. Co.*, 959 F.2d 677, 684 (7th Cir. 1992), but that case does not involve the False Claims Act or any complaint submitted to the government.

with respect to the submission of a false claim based solely on 'information and belief' because they have not provided factual grounds for their suspicions." R. 54 at 6. As discussed, however, Plaintiffs have alleged that four Home Bound nurses told them about five patients who received home health services when they did not need those services, and that those five patients were Medicare patients. Home Bound argues that these allegations are insufficient because "it is impossible to ascertain what, if any, false claims were actually submitted to Medicare." R. 54 at 7. But at this stage of the case, Plaintiffs do not have the burden to produce evidence that would enable the Court to "ascertain" whether Home Bound "actually" submitted false claims to Medicate. Plaintiffs simply have to plausibly *allege* these facts, and they have done so. *See Lusby*, 570 F.3d at 853 ("To say that fraud has been *pleaded* with particularity is not to say that it has been *proved* (nor is proof part of the pleading requirement).") (emphasis in original).

Home Bound argues that Plaintiffs "must allege specific details concerning how [Home Bound] submitted false claims to the government, such as identifying claims, dates, or details of payment." R. 54 at 7. In a similar vein, Home Bound argues that Plaintiffs' allegations are insufficient because they have failed to allege the "how" or the "who" regarding Home Bound's alleged false claims. *See* R. 54 at 10. But Plaintiffs do not plausibly have access to such detailed information. As discussed, in the False Claims Act context Plaintiffs are not required to allege such billing minutia in order to satisfy Rule 9(b). Rather, Plaintiffs must allege "circumstances" plausibly indicating a false claim, which provide notice to the

defendant. Here, Plaintiffs have provided the names of the patients involved, the nurses who are the sources of their information, and the four month time period during which the alleged false claims occurred. This is enough information to substantiate Plaintiffs' suspicions and for Home Bound to defend itself.

Home Bound argues that in *Lusby*, one of the primary cases in which the Seventh Circuit has held that False Claims Act plaintiffs are not required to specifically identify false claims, the plaintiff was able to allege greater detail than Plaintiffs have here. To the extent that the allegations in *Lusby* were more detailed, the Court disagrees that this greater detail is dispositive here. The plaintiff in *Lusby* alleged that certain engine parts built pursuant to a government contract did not meet the government's specifications, and stated the dates on which those parts were shipped to the government. Plaintiffs here have similarly alleged that five patients did not require home health care, and that Home Bound presented claims for their services to Medicare within a four month time window. These facts are not as distinguishable as Home Bound contends.

Home Bound's citation to a recent case from the Central District of Illinois is unavailing. R. 54 at 11 (citing *United States ex rel. Gravett v. Methodist Med. Ctr. of Ill.*, 82 F. Supp. 3d 835 (C.D. Ill. Mar. 4, 2015)). In *Gravett*, the court stated, "Courts of Appeal are in agreement that unless the relator is in a special position of personal knowledge of involvement in the billing practices of the defendant that affords some indicia of reliability to the allegations, the failure to provide specific information of at least a single false claim that was actually submitted for payment

is fatal to a relator's action under the FCA." *Id.* at 842. But the court in *Gravett* cited a decision on summary judgment to support this proposition. *Id.* (citing *United States ex rel. Crews v. NCS Healthcare of Ill., Inc.*, 460 F.3d 853, 856 (7th Cir. 2006)). Of course on summary judgment the plaintiff will have to show some evidence that a false claim was actually submitted. But that is not the law at the pleading stage. Moreover, *Crews* and another appellate decision relied on by *Crews* and *Gravett* (*United States ex rel. Quinn v. Omnicare, Inc.*, 382 F.3d 432, 440 (3d Cir. 2004), concerned cases in which the plaintiff attempted to defeat summary judgment on claim for medication reimbursement using statistical analysis that compared the percentage of the defendant's patients who were covered by Medicare with the percentage of medication the defendant's patients returned unused. The courts in those cases held that the statistical analysis alone was insufficient to create a question of fact that the defendant actually submitted any claim for reimbursement, let alone a false claim.

These cases are not analogous to Plaintiffs' allegations here. Plaintiffs rely on information they learned from Home Bound nurses who have identified by name five patients for whom Home Bound allegedly submitted false claims. These allegations are much more fulsome than the allegations based on abstract statistical analysis that were at issue in the cases Home Bound argues support dismissal.

Moreover, Home Bound should know the answer to the question of whether Home Bound submitted claims to Medicare on behalf of the patients named in the complaint. If Home Bound knew that they never actually submitted a Medicare

claim for home health services provided to the five named patients, Home Bound could have sought summary judgment based on those records. As noted, it is more than plausible that Home Bound has submitted Medicare claims for services provided to the five patients. The real question in this case will be whether those patients were properly certified as eligible for those services under Medicare.

## 2. Whether Plaintiffs Have Sufficiently Alleged Falsity

In addition to its arguments regarding Rule 9(b) and presentation of claims, Home Bound argues that Plaintiffs do not plausibly allege that the claims Home Bound is alleged to have presented to Medicare were false. Home Bound contends that Plaintiffs allegations are insufficient because they are based on information learned from nurses, whereas only doctors can certify that patients are eligible for home health services under Medicare. R. 54 at 15. This is an issue relevant to determining Home Bound's liability. But it does not destroy the plausibility of Plaintiffs' allegations. Although nurses may not have the legal authority to certify patients under Medicare, it is certainly plausible that nurses have knowledge of when a person requires such services, since nurses are intimately involved in provision of such care. Further, nurses would gain some knowledge of Medicare's requirements because of their involvement in completing the paperwork necessary for billing. Plaintiffs' allegations are plausible despite the fact that they rely on information from nurses as opposed to doctors.

Home Bound also argues that Plaintiffs "fail[] to allege the course of treatment prescribed for any particular patients that would allow for the inference

that home health services were not necessary or that the patient was in fact not 'homebound.'" R. 38 at 23. Relatedly, with reference to three of the patients cited in the complaint, Home Bound contends that the "fact that a patient resumed home health services after being discharged, does not, in [and] of itself, make such services fraudulent." *Id.* at 25. These arguments, however, are also based on the idea that the opinion of a nurse is irrelevant. Plaintiffs allege that Home Bound nurses told them that Home Bound provided and charged Medicare for home health care services for five patients who did not require those services. Certainly, the nurses could be wrong, or the resumption of home health care services for certain patients could be perfectly legitimate. But since these allegations are based on the opinions of nurses who were directly involved in the patients' care, they "allow for the inference" that Home Bound violated the False Claims Act, and that is all that is required at this stage.

Home Bound also contends that Plaintiffs' allegations with respect to the five patients "fail to include even the most basic clinical data that would allow for judgment on . . . whether the five named . . . patients were in fact home bound." R. 38 at 25. This arguments also requires too much of Plaintiffs at this stage. Plaintiffs have made allegations that will permit Home Bound to locate the "clinical data" in discovery that is relevant to its liability or lack thereof. No "judgment" about the "facts" is appropriate at this point in the case.

### B.    Claims for Services which Were Not Rendered

#### 1.    Presentation of Claims

Home Bound makes the same arguments based on Rule 9(b) with respect to Plaintiffs' allegations of presentation of claims for services not rendered as it does with respect to Plaintiffs' allegations of services provided to patients who did not qualify for home health care services. The Court's earlier application of Rule 9(b) regarding allegations of presentation of false claims to Medicare applies equally to this theory of liability. For the reasons stated with respect to Plaintiffs' theory regarding patients who did not qualify for home health care services, the Court will not dismiss Plaintiffs' FCA claim alleging that Home Bound presented claims for services not rendered.

#### 2.    Falsity

Plaintiffs allege that Home Bound failed to render certain services for which it claimed Medicare reimbursement because nurses were instructed to skip certain patient assessments. Home Bound contends that Plaintiffs "do not identify who told the nurses to skip taking the basic assessments or whether that actually happened." R. 38 at 17. But Plaintiffs allege that Nurse Denise Smith instructed nurses to skip assessments like the "Timed Up & Go" assessment. *See* R. 32 ¶ 46. Additionally, Plaintiffs allege that a statistical analysis of the frequency of visits made to Home Bound patients shows that Home Bound determines the frequency of patient visits according to the number that is most profitable under Medicare regulations. Other paragraphs of the complaint alleging skipped assessments do not specifically allege

how Plaintiffs know this information. But the specific reference to Nurse Smith, the statistics Plaintiffs cite, combined with the references to other nurses named in the complaint, adequately convey the basis for Plaintiffs knowledge and make those allegations plausible. As discussed, the complaint identifies the patients and nurses who are the relevant players in Plaintiffs' story, and the actions they took that form the basis of Plaintiffs' claims. These allegations are sufficient to survive a motion to dismiss.

**Count II – Anti-Kickback Statute**

The Anti-Kickback Statute "makes it illegal to 'knowingly and willfully solicit[] or receive[] any remuneration (including any kickback, bribe, or rebate) . . . in return for referring an individual to a person for the furnishing' of health care services paid for, in whole or in part, by a federal health program." *United States v. Patel*, 778 F.3d 607, 609 (7th Cir. 2015) (quoting 42 U.S.C. § 1320a-7b(b)(1)(A)). Courts in this district "have recognized [False Claims Act] claims based on violations of the [Anti-Kickback Statute]." *United States ex rel. Kalec v. NuWave Monitoring, LLC*, 84 F. Supp. 3d 793, 806 (N.D. Ill. 2015) (citing cases).

Plaintiffs fail to state a claim under the Anti-Kickback Statute. Plaintiffs allege that Nurse Angela Clark witnessed Ruby Rosalem, an administrator at Home Bound's Peoria location, leave the office with blank certification forms to take to Dr. Michael Honan to sign. Plaintiffs also allege that Dr. Honan signed one of those forms certifying a certain patient for home health care services without actually

examining her, and that Home Bound compensates Dr. Honan for certifying patients he has not actually examined.

Plaintiffs' allegations based on Nurse Clark's observations are well pled, but those allegations alone are insufficient to allege a violation of the Anti-Kickback Statute. Plaintiffs have not made any allegations to make it plausible that Rosalem was delivering the forms to Dr. Honan for a nefarious purpose, let alone sufficient to satisfy Rule 9(b)'s particularity standard. If Dr. Honan is a consulting physician for Home Bound as Plaintiffs allege, it is unsurprising that Home Bound would provide him with the forms he needed to do his job. Additionally, Plaintiffs have not alleged how they know that Home Bound pays Dr. Honan or any other doctor for certifying patients for home health care services without examining them. Similarly, although Plaintiffs specifically identify a patient they believe Dr. Honan certified without examination, Plaintiffs fail to allege why they believe this to be true.

Unlike Plaintiffs' allegations in Count I, Plaintiff have failed to justify their pleading on information and belief in Count II. As discussed, the Seventh Circuit permits plaintiffs in an FCA action to plead facts for which they do not have access on information and belief as long as the plaintiff provides "some firsthand information to provide grounds to corroborate [the plaintiff's] suspicions." *Pirelli*, 631 F.3d at 446. Plaintiffs have provided no such grounds with respect to their Anti-Kickback claim. Nurse Clark's observations do not make plausible Plaintiffs' suspicions about Home Bound's payments to doctors generally, or Dr. Honan's certification of the individual patient specifically. Unlike Plaintiffs' allegations in

Count I, Plaintiffs do not allege that any Home Bound employees have told them that Home Bound pays doctors to certify patients without examination. Neither have Plaintiffs identified any documentary evidence making their allegations plausible. Thus, Count II is dismissed.[3]

## Count III –False Medicaid Claims under the Illinois False Claims Act

In Count III, Plaintiffs allege that "Home Bound has made, and continues to make, false and fraudulent claims for payments by the State of Illinois through the Medicaid program as described hereunder, in violation of the Illinois False Claims Act." R. 32 ¶ 109. But Plaintiffs have not made any substantive allegations regarding Medi*caid* claims. Plaintiffs' substantive allegations reference only false Medi*care* claims.

---

[3] Home Bound also argues that "Plaintiffs fail to allege that certification of regulatory compliance with the [Anti-Kickback Statute] was a condition of receiving payment from the government," which is a necessary element of an "FCA claim premised upon an alleged false certification of compliance with statutory or regulatory requirements." R. 38 at 32 (citing *Crews*, 460 F.3d at 858). Plaintiffs implicitly concede that they failed to make such an allegation. But such an allegation is likely easily made with reference to the correct Medicare regulations and forms. And a number of courts have held that compliance with the Anti-Kickback Statute is a condition of payment for Medicare. *See United States v. Rogan*, 459 F. Supp. 2d 692, 714 (N.D. Ill. 2006) ("Compliance with the Anti-Kickback Statute is a condition of payment by the Medicare and Medicaid programs."); *United States ex rel. Wilkins v. United Health Group, Inc.*, 659 F.3d 295, 313 (3d Cir. 2011) ("Compliance with the [Anti-Kickback Statute] is clearly a condition of payment under Parts C and D of Medicare . . . ."); *United States ex rel. McNutt v. Haleyville Med. Supplies, Inc.*, 423 F.3d 1256, 1260 (11th Cir. 2005). For these reasons, the Court would order additional briefing on this point if it was necessary to decide this motion. But since the Court has held that Plaintiffs' allegations are insufficient for the reasons discussed, the Court does not need to reach the question of whether certification of compliance with the Anti-Kickback Statute is a condition of payment for Medicare reimbursement claims.

To the extent Plaintiffs intended to allege a claim that Home Bound violated the Illinois False Claims Act by presenting false Medicaid claims, that claim is dismissed. However, to the extent Plaintiffs intended to allege that Home Bound violated the Illinois False Claims Act by presenting the false Medicare claims they alleged with reference to the federal False Claims Act, such a claim rises and falls with the foregoing analysis of Plaintiffs allegations, because the statutory language and standards for the FCA and the IFCA are substantially the same. *See United States ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.*, 764 F.3d 699, 704 n.5 (7th Cir. 2014) ("the [Illinois False Claims Act] closely mirrors the [federal False Claims Act]"); *United States ex rel. Kennedy v. Aventis Pharm., Inc.*, 512 F. Supp. 2d 1158, 1163 n.2 (N.D. Ill. 2007) ("Case law regarding the [federal False Claims Act] is also applicable to the [Illinois False Claims Act].").

## Conclusion

For the foregoing reasons, Home Bound's motion to dismiss, R. 36, is denied with respect to Count I, and granted with respect to Counts II and III without prejudice. To the extent Plaintiffs can cure the deficiencies the Court has described with respect to Counts II and III, Plaintiffs may file an amended complaint by December 8, 2015. A status hearing is set for December 18, 2015.

ENTERED:

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: November 17, 2015